# IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROTHSCHILD BROADCAST DISTIRBUTION SYSTEMs LLC, | ) | C.A. No. 1:20-cv-00393-MN |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| FUBOTV, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT FUBOTV, INC.'S OPENING BRIEF IN SUPPORT OF
## ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND 35 U.S.C. § 101

*Of Counsel*:
James Yoon
Jamie Otto
Michael Nguyen
WILSON SONSINI GOODRICH
& ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
650-849-3495

Dated:  July 27, 2020

Ian R. Liston (Del. Bar ID 5507)
WILSON SONSINI GOODRICH
& ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
302-304-7600
iliston@wsgr.com

*Counsel for Defendant fuboTV, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.  NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

II.  SUMMARY OF THE ARGUMENT ...................................................... 1

III.  STATEMENT OF THE FACTS .......................................................... 3

  A.  THE PARTIES AND THE PATENT-IN-SUIT ....................................... 3

IV.  ARGUMENT ................................................................................. 7

  A.  LEGAL STANDARDS .................................................................... 7

  B.  THE '221 PATENT IS INVALID UNDER 35 U.S. CODE § 101 AS A MATTER OF LAW ............ 9

    1.  *Alice* Step One: The '221 Patent's Claims Are Directed to the Abstract Idea of Requesting to Receive or Store Media Content. ........................................ 9

      a.  The Claims Recite Functional Language and a Generic "Processor" to Describe a Common Business Practice. ................................................ 9

      b.  Numerous Cases from This Court and the Federal Circuit Confirm that the '221 Patent's Claims Are Directed to an Abstract Idea................................ 11

    2.  *Alice* Step Two: The Recited Limitations Do Not Transform the Claims into Significantly More than the Abstract Idea ................................................ 14

      a.  Each Step of the Claims Merely Describes a Component of an Abstract Idea ..... 15

      b.  The '221 Patent Relies on Use of Generic Computers in Conventional Ways ..... 16

    3.  Claim 7 is Representative of the '221 Patent's Claims............................. 18

  C.  THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR PATENT INFRINGEMENT...... 19

V.  CONCLUSION ............................................................................. 20

-i-

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)...............................................................................12, 15

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
    573 U.S. 208 (2014).................................................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................7

*British Telecomms. PLC v. IAC/InterActiveCorp*,
    381 F. Supp. 3d 293 (D. Del. 2019)....................................................................8, 10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)..............................................................................9

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
    363 F. Supp. 3d 511 (D. Del. 2019)...........................................................9, 15, 16, 17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).............................................................................14

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)............................................................................16

*Elec. Comm'n Techs., LLC v. ShoppersChoice, LLC*,
    958 F.3d 1178 (Fed. Cir, May 2020) .....................................................................11

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................................9, 16, 18

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020).............................................................................13

*Intellectual Ventures I LLC v. Symantec Corp.*,
    234 F. Supp. 3d 601 (D. Del. 2017),
    *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018)...........................................................13, 14

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
    173 F. Supp. 3d 717 (N.D. Ill. 2016) ....................................................................8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)................................................................................................8

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997)..................................................................................7

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)..........................................................................................16

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
  696 Fed. App'x 1014 (Fed. Cir. 2017)...............................................................................13

*Rothschild Broad. Distrib. Sys., LLC v. Deezer, Inc.*,
  1:20-cv-00392-MN (D. Del. filed March 19, 2020) ............................................................1

*Rothschild Broad. Distrib. Sys., LLC v. Project Panther US, LLC*, 1:20-cv-00396-
  MN (D. Del. filed March 19, 2020) ......................................................................................1

*Rothschild Broad. Distrib. Sys., LLC v. UStream, Inc.*,
  6:15-cv-00230-RWS-JDL (E.D. Tex. filed Mar. 19, 2015)..................................................1

*Rothschild Broad. Distrib. Sys., LLC v. VUDU, Inc.*,
  No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed Mar. 19, 2015)...................................1, 10

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)............................................................................................7

*TriPlay, Inc. v. WhatsApp Inc.*,
  2018 WL 1479027 (D. Del. Mar. 27, 2018),
  *aff'd*, 771 F. App'x 492 (Fed. Cir. 2019) .........................................................................17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)..........................................................................................12

*Ultramercial, Inc. v. Hulu*, LLC,
  772 F.3d 709 (Fed. Cir. 2014)........................................................................................8, 15

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019)............................................................................................3

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
  2015 WL 5768938 (D. Del. Sept. 30, 2015) .......................................................................17

*WhitServe LLC v. Donuts Inc.*,
  390 F. Supp. 3d 571 (D. Del. 2019) ......................................................................................7

**STATUTES**

35 U.S.C. § 101 ........................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 3, 7

Defendant fuboTV, Inc. ("fuboTV") hereby moves to dismiss this patent infringement action pursuant to Federal Rule of Procedure 12(b)(6) with prejudice because the asserted patent, U.S. Patent No. 8,856,221 (the "'221 patent") is directed to an abstract idea and is therefore invalid under 35 U.S.C. § 101.  In the alternative, this action should be dismissed because the complaint fails to allege a plausible claim for patent infringement.

## I.    Nature and Stage of the Proceedings

On or about March 19, 2020, Plaintiff Rothschild Broadcast Distribution Systems, LLC ("Rothschild") filed lawsuits alleging infringement of the '221 patent against fuboTV and several other defendants.  Indeed, since the '221 patent was issued in 2014, Rothschild has asserted it over sixty times in various district courts; while several of the most recent cases, including this case, remain pending, Rothschild has reached early settlements in more than fifty of the cases it has filed, always before any court could reach a determination on the merits. In several of the cases, defendants filed motions to dismiss for failure to state a claim pursuant to 35 U.S.C. § 101, and Rothschild settled shortly thereafter. *See, e.g.*, *Rothschild Broad. Distrib. Sys., LLC v. VUDU, Inc.*, No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed Mar. 19, 2015); *Rothschild Broad. Distrib. Sys., LLC v. UStream, Inc.*, 6:15-cv-00230-RWS-JDL (E.D. Tex. filed Mar. 19, 2015); *Rothschild Broad. Distrib. Sys., LLC v. Deezer, Inc.*, 1:20-cv-00392-MN (D. Del. filed March 19, 2020); *Rothschild Broad. Distrib. Sys., LLC v. Project Panther US, LLC*, 1:20-cv-00396-MN (D. Del. filed March 19, 2020).  fuboTV now moves to dismiss Rothschild's Complaint (D.I. 1) on similar grounds.

## II.    Summary of the Argument

The '221 patent is invalid under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014) and its progeny. Its claims are directed to the abstract idea of

enabling subscribers to request available media content or to have it stored for a specified period of time. The '221 patent's claims are similar to claim sets of numerous other patents that have been held patent-ineligible by the Federal Circuit and this Court. Indeed, the '221 patent includes an admission that the purported invention is based on generic and conventional computing techniques and components. The claims add nothing that transform them into significantly more than the abstract idea to which they are directed.

As to *Alice* step one, the claims are directed to an idea that consistently has been recognized as abstract. Representative claim 7 recites a method for handling a subscriber's request to a processor to send "media content" or store it for some specified amount of time. If the media content exists and is available, it is delivered to the subscriber unless there is a restriction preventing the subscriber from receiving it. Multiple cases from by Federal Circuit and this Court have held that claims directed to managing data rights, providing selective or customized access to data, or enabling subscriptions for data storage are directed to abstract, patent-ineligible ideas. Claims for "storing media content and delivering requested media content to a consumer device" as recited a column 11 lines 43-44 of the '221 patent are no different.

As to *Alice* step two, the elements of the '221 patent claims, either individually or as an ordered combination, do not transform the claims into significantly more than the abstract idea of selectively delivering or storing media content based upon a subscriber's request. There is nothing unconventional about receiving requests from subscribers, parsing requests, and delivering requested content if the subscriber is entitled to it, or storing the content. As other defendants raised in 12(b)(6) motions in prior lawsuits for this patent, these steps are an everyday occurrence in the retail context; the claims are particularly analogous to the tasks performed decades ago at video rental stores, where store clerks would receive customer requests for videos and check if the

customer's membership was up to date and if the videos were available. The '221 patent merely takes this method and "applies it to a computer" in a routine way. *See Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (invalidating a "do it on a computer" patent). The '221 patent specification discloses, at 10:12-16, that the "invention" can work on any computer system or on any combination of hardware and software.  Claims that "can be performed using '[a]ny kind of computer system or other apparatus,' do not represent any "specific improvement to the way computers operate". *Univ. of Fla.*, 916 F.3d at 1368.

The '221 patent claims are therefore invalid under 35 U.S.C. § 101 as a matter of law. The Complaint should be dismissed with prejudice for failure to state a claim.

In the alternative, the Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a plausible claim for patent infringement. The Complaint includes no plausible allegation that fuboTV's customers specify a length of time to store media content on the accused system, as required by an element of representative claim 7.  Indeed, Paragraph 24 of the Complaint alleges, through including a screenshot of fuboTV's website, that fuboTV's customers can store recorded media "indefinitely".

## III.     Statement of the Facts

### A.     The Parties and the Patent-in-Suit

fuboTV, Inc. is a Delaware corporation with its headquarters in New York, NY. It provides  a sports-focused live television streaming service.

Rothschild is a Texas limited liability company with its principal place of business in Miami, Florida. The Complaint provides no information as to whether Rothschild has any employees, has made any products, or provides any services. *See* D.I. 1. Since the '221 patent issued in 2014, Rothschild has settled more than fifty cases in which it has asserted the '221 patent,

but the Complaint makes no mention as to whether Rothschild licensed any of those companies on the '221 patent.

The '221 patent generally pertains to the field of "on-demand storage and delivery of media content." '221 patent, 1:26-27. The patent's Background section identifies two possible concerns about streaming services, both of which are not technological in nature. First, the patent notes that some on-demand streaming service plans charge a single flat-rate monthly subscription fee, regardless of whether a consumer watches many videos or just a few per month, while some others charge a "set fee for streaming a specific episode of a television program" regardless of the length of the show. *Id.* at 1:47-66. The patent also identifies a possible scenario where consumers using a streaming service may request a video that is not yet available, but then may lose interest in watching the video by the time that the service begins hosting that video for steaming. *Id.* at 2:312. The patent concludes that "[t]here is a need in the art for an on-demand media storage and streaming system that tailors cost to each consumer based on the requested media content and each consumer's needs." *Id.* at 2:13-16.

The Summary of the Invention section of the '221 patent specification describes the "present invention" as "advantageously provid[ing] a method and system for on-demand storage and delivery of media content." *Id.* at 2:20-22. The patent discloses a "storage and streaming system" that includes one or more "consumer devices" and a "network" of servers that can be in a "cloud-computing environment." *Id.* at 3:43-55. According to the patent, the "consumer device 12" may communicate with "network 18 using communication protocols known in the art" and may include a processor "for executing computer program instructions stored in memory 26, as is well known in the art." *Id.* at 3:47-52, 66-67. A "broadcast server" may store "media content existence" information that "may indicate whether the media content exist[s], e.g., media content

-4-

[is] not found because user input the wrong movie title." *Id.* at 4:23-41. A "remote server" may store media content "for a specific length of time." *Id.* at 42-55. The patent also describes that a consumer's "cost amount" for using the on-demand system can be based on the "amount of playback time corresponding to the media content" (i.e., how long the video is) or "the length of time the consumer wants to store the requested content." *Id.* at 8:20-25.

The specification describes the consumer device and servers as being comprised of conventional, generic components (i.e., processor, transmitters, receivers, and memory). The patent describes no specific configuration for the servers and, in fact, provides no information at all aside from high-level, generic functionality. The patent explains that the "invention" can be applied to any computer system or network, in any combination of hardware or software:

> The present invention can be realized in hardware, software, or a combination of hardware and software. Any kind of computing system, or other apparatus adapted for carrying out the methods described herein, is suited to perform the functions described herein. A typical combination of hardware and software could be a specialized or general purpose computer system having one or more processing elements and a computer program stored on a storage medium that, when loaded and executed, controls the computer system such that it carries out the methods described herein. The present invention can also be embedded in a computer program product, which comprises all the features enabling the implementation of the methods described herein, and which, when loaded in a computing system is able to carry out these methods. Storage medium refers to any volatile or non-volatile storage device.

*Id.* at 10:12-27.

The patent concludes with 13 claims. The Complaint refers only to claim 7:

> 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising:
> receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device;
> determining whether the consumer device identifier corresponds to a registered consumer device; and
> if it is determined that the consumer device identifier corresponds to the registered consumer device, then: determining, whether

> the request message is one of a storage request message and a content request message; and
>
> if the request message is the storage request message, then determining whether the requested media content is available for storage; and
>
> if the request message is the content request message, then initiating delivery of the requested media content to the consumer device;
>
> wherein the media data includes time data that indicates a length of time to store the requested media content; and
>
> the first processor is further configured to determine whether the requested media content exists and
>
> if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.

*Id.* at 11:43-12:24. Notably, neither claim 7 nor any other claim is specifically directed to "steaming service" or solving concerns such as a consumer being overcharged the same amount regardless of the duration of a video, or a consumer losing interest while waiting for a video to be made available, as discussed in the Background section.

In the Complaint, Rothschild accuses the "fuboTV streaming platform" of allegedly "practic[ing] a method of storing (e.g., cloud storage) media content (e.g. and recorded music) and delivering requested media content to a consumer device." D.I. 1 ¶ 18. Without pointing to any particular configuration, feature, or functionality, the Complaint parrots the language of the claim by alleging that the accused product "necessarily includes a receiver configured to receive a request message including data indicating requested media content (e.g., the Product must have infrastructure to receive a request to store recorded media content or to stream recorded media content on a smartphone; additionally, the request message must contain data that identifies the content to be stored or streamed)." *Id.* at ¶ 19.

Further, the asserted independent claim 7 recites a method that includes "receiving a requested message including media data indicating requested media content ... wherein the media

data includes time data that indicates a length of time to store the requested media content". '221 patent, 12:14-15.  According to the patent specification, the consumer specifies the length of time for storing the requested media content. *Id.* 7:64-8:3. The Complaint alleges that fuboTV's accused system receives a message including data specifying the length of time to store media content only with reference to the subscription plan for fuboTV's customers. D.I. 1 ¶ 24 (alleging that "a user is allowed to store media content for maximum time period as based upon their subscription level").

The Complaint includes certain screenshots from https://www.fubo.tv, but there is no indication that Rothschild operated or evaluated fuboTV's product.

## IV.    Argument

### A.    Legal Standards

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a claim must allege sufficient facts such that, when accepted as true, state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court may disregard any legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts… require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019) (noting it is "well-settled" to determine patent eligibility at motion to dismiss stage and citing cases).

Moreover, the court may resolve patent eligibility before claim construction.  Indeed, "addressing section 101 at the outset of litigation will have a number of salutary effects,"

including conserving judicial resources and exposing "basic deficiencies" in a complaint before the parties expend excess time and money. *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (internal quotation marks omitted). When, as here, the claims "disclose[] no more than an abstract idea garnished with accessories and there [i]s no reasonable construction that would bring [them] within the patentable subject matter," a court should resolve patent eligibility before claim construction. *Id.* at 719 (internal quotation marks omitted). Further, when it is clear even without claim construction that a patent does not contain details about how computer components are " 'manipulated' or otherwise programmed to yield results . . . no formal claim construction is required." *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 725 (N.D. Ill. 2016).

In analyzing patent eligibility under *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the Court performs two steps. First, the court determines whether a claim is "directed to" a patent-ineligible concept, such as an abstract idea ("step one"). *Id.* at 217. For example, a claim is abstract when the language "is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved." *British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 305 (D. Del. 2019). If the claim is directed to a patent-ineligible concept, the court then must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" that is significantly more than a claim to the abstract idea ("step two"). *Id. at 303-304* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). An abstract idea itself, "no matter how beneficial," cannot serve as the inventive concept for step two. *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 523 (D. Del. 2019).

-8-

**B.      The '221 Patent Is Invalid Under 35 U.S. Code § 101 as a Matter of Law**

The claims of the '221 patent are directed to the abstract idea of enabling subscribers to request available media content or have it stored for a specified period of time. The recited limitations do not recite anything unconventional that would amount to significantly more than the abstract idea itself. The specification confirms that the "invention" is directed to purely functional limitations, applying an abstract concept to a generic computer network.

### 1.      *Alice* Step One: The '221 Patent's Claims Are Directed to the Abstract Idea of Requesting to Receive or Store Media Content.

Step one of the Court's inquiry under § 101 inquiry begins by "looking at the 'focus' of the claims, their character as a whole," to assess whether they are directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). For this step, "the specification must always yield to the claim language" when identifying "the true focus of a claim." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

#### a.      The Claims Recite Functional Language and a Generic "Processor" to Describe a Common Business Practice.

As set forth in its preamble, claim 7 is directed to "[a] method for storing media content and delivering requested media content to a consumer device." '221 patent, 11:43-44. The patent's summary of the invention similarly characterizes "[t]he present invention" as "advantageously provid[ing] a method and system for on-demand storage and delivery of media content." *Id.* at 2:20-22.

The claimed method entails the following steps: (a) receiving messages from consumers requesting content; (b) determining whether the consumer is using a registered consumer device; (c) determining whether the consumer has sent a request for immediate delivery or for storage; (d) if the consumer is registered and is requesting to receive content, delivering the content if it is available and not restricted; and (e) if the consumer is registered and is requesting to have content

stored, storing the content if it is available, for an amount of time specified by the consumer. *Id.* at 11:43-12:24. Thus, the claim recites generic, functional outcomes such as "receiving," "determining," and "delivering," but does not describe how to achieve them in a non-abstract way. Put simply, if the consumer is authorized and if the content is available, then the consumer can receive it or have it stored. Courts have rejected this sort of functional claiming under § 101. *See British Telecomms.*, 381 F. Supp. 3d at 305-07.

The patent recites that steps are performed by a generic "processor," but a human could easily perform the same steps. *See, e.g.*, '221 patent, 2:25-33. Indeed, in prior suits brought by Rothschild on the same patent,  defendants have aptly compared the claims of the '221 patent to steps that a video store clerk typically performed when customers sought to rent a video from a store. *See, e.g.,* Memorandum in Support of Motion to Dismiss at 14-15, *Rothschild Broad. Distrib. Sys., LLC v. VUDU, Inc.*, No. 6:15-cv-00233-RWS-JDL (E.D. Tex. filed Mar. 19, 2015):

| Claim 7 Language | As Performed by a Human |
|---|---|
| 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising: | A clerk at a video rental store: |
| receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device; | Accepts requests from customers for videos, wherein the requests contain certain information including the title of the video, how long the customer wants to retain it, at the same time as an identifier for the customer (e.g., the video rental store's membership card). |
| determining whether the consumer device identifier corresponds to a registered consumer device; and | Checks the customer's membership card against a list of approved members without any late fees. |
| if it is determined that the consumer device identifier corresponds to the registered consumer device, then:<br><br>determining, whether the request message is one of a storage request message and a content request message; and | If the clerk determines that the customer is on the list of approved members, then the clerk will determine whether the customer is asking for a video that is available for rental now or to back-order a video that isn't on the shelves. |

-10-

| | |
|---|---|
| if the request message is the storage request message, then determining whether the requested media content is available for storage; and | If the customer wants to back-order a video, the clerk will check a list of videos from the company's warehouse to see if the video can be back-ordered. |
| if the request message is the content request message, then initiating delivery of the requested media content to the consumer device; | If the customer wants a video that is in stock, then the clerk will give the video to the customer for rental. |
| wherein the media data includes time data that indicates a length of time to store the requested media content; and | The clerk is able to receive information from customers about how long they would like the store to stock the video before returning it to the warehouse. |
| the first processor is further configured to determine whether the requested media content exists; and | The clerk checks the shelves of the store and the list of warehoused videos to see if the video rental store has the video anywhere. |
| if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device. | If the clerk sees that the video rental store has the video somewhere, the clerk will determine whether the video is available and whether there are any restrictions on the membership that would preclude the rental of the video to the customer (e.g., no restricted movies for members under 17; no rentals to customers to who have not paid late fees). |

Each step of Claim 7 could readily be performed by a human and directly corresponds to a longstanding business practice from the 1980s and 1990s: renting videos for customers to watch at home on VCRs. The claims of the '221 patent merely perform the same method on a generic "processor." Claims, like Claim 7, "that are directed to longstanding commercial practices do not pass step one of the two-part § 101 test." *Elec. Comm'n Techs., LLC v. ShoppersChoice, LLC*, 958 F.3d 1178, 1182  (Fed. Cir, May 2020) (citing *Alice*, 573, U.S. at 219-20).

> b.    Numerous Cases from This Court and the Federal Circuit Confirm that the '221 Patent's Claims Are Directed to an Abstract Idea

Binding precedent confirms that the claims of the '221 patent are directed to a patent-ineligible abstract idea.   Unlike claims directed to improving *how to stream* media, which  may be technological in nature, claims simply directed to *when to authorize media streaming* have been

found to be patent-ineligible as abstract. Thus, in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016), the claim was "directed to a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface." *Id.* at 1268. The Federal Circuit determined the claim was abstract because the claim disclosed no mechanism for wireless streaming to a handheld device, and "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* at 1269.  Similarly, though the '221 patent recites functional steps for storing and delivering media content, it does not recite a "concrete embodiment" of that idea, but instead generically describes computer components that receive and parse requests for delivery or storage of media content.

Similarly, in *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017), the Federal Circuit found claims on a control mechanism for managing users who are receiving real-time information to be abstract for using generic, functional language, such as "converting," "routing," "controlling," "monitoring," and "accumulating records," where the claim failed to "sufficiently describe how to achieve these results in a non-abstract way." *Id.* at 1337. Similarly, the '221 claims list a series of functional steps— including "receiving," "determining," and "initiating delivery"—but lack specific details as to how components communicate with each other or how media content is streamed or stored. Indeed, the patent concedes that the consumer devices and central processing unit operate in ways "well known in the art." '221 patent, 3:61-67.

Claims pertaining to making content only selectively accessible over a network to subscribers are also patent-ineligible as directed to an abstract idea. In *Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 Fed. App'x 1014 (Fed. Cir. 2017), the Federal Circuit found claims directed to a process of "(1) receiving identity data from a device with a request for access to

-12-

resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources," to be abstract. *Id.* at 1017. This year, the Federal Circuit held that a telecommunications patent claiming "a system for controlling access to a platform" was ineligible. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1325 (Fed. Cir. 2020). The patent was directed to "controlling access by receiving a request and then determining if the request should be granted," which the Federal Circuit determine was a "bare abstract idea." *Id.* at 1326.

Like *Prism Technologies* and *Ericsson*, the '221 patent involves selective access to media content. *See* '221 patent, 12:1-2, 18-22 ("determining whether the consumer device identifier corresponds to a registered consumer device" and determining "whether there are restrictions associated with the requested media content"). The patent specification reinforces the theme of selective access: subscribers to an on-demand video service are allowed to access media content while non-subscribers are not. *Id.* at 5: 8-10 ("Remote server 16 determines whether the request message is received from a registered user"). As confirmed by binding precedent, claims directed to controlling access to resources are abstract.

In addition, claims pertaining to storing or backing up data are abstract. Thus, this Court held in *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 607 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018) that a patent directed to backing up data was invalid, explaining that "institutions have long backed up data in general." *Id.* at 607. The patent did not improve computer technology itself, but merely "rel[ied] on the ordinary storage and transmission capabilities of computers within a network and appl[ied] that ordinary functionality in the particular context of remote mirroring." *Id.* And in *Content Extraction & Transmission LLC v.*

-13-

*Wells Fargo Bank, National Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014), the Federal Circuit similarly stated, "[t]he concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.* at 1347.

The '221 patent is directed in part to "storing broadcast content in a cloud-based computing environment." '221 patent, 1:1-3. But the claim limitations relating to storage are basic:  they include determining whether a given request is a storage request and, if so, determining whether the content is available for storage. *Id.* at 12:5-10. The added limitation of "a length of time to store the requested media content" does not make the idea any less abstract. *Id.* at 12:14-15. As illustrated above, claims directed to storing data are abstract, even when performed by computer networks and limited to a "particular context." *Symantec*, 234 F. Supp. 3d at 607.

For purposes of step one, the focus of the '221 patent claims is a system that provides selective access to content for subscribers or gives subscribers the option to store content for a specified amount of time, which is abstract under the precedent of the Federal Circuit and this Court. The only technology involved are generic and conventional processors and techniques. Therefore, the claims of the '221 patent are directed to a patent-ineligible, abstract idea.

### 2.    *Alice* **Step Two: The Recited Limitations Do Not Transform the Claims into Significantly More than the Abstract Idea**

Because the asserted claims are directed to an abstract idea, they are invalid unless they embody an "inventive concept" that is "significantly more" than the abstract idea, under "step two." *Alice*, 573 U.S. at 217-18. The '221 patent claims fail step two of the § 101 test. The purported "invention" is claimed through routine, functional steps that do not improve how a computer functions. Indeed, the patentee acknowledges that its "media content system" is generic, comprising any network of servers implemented in hardware, software, or combination thereof.  The claimed method does not amount to significantly more than the abstract idea itself.

-14-

> a.   *Each Step of the Claims Merely Describes a Component of an Abstract Idea*

Whether considered individually collectively, the recited steps of the '221 patent claims do not "do significantly more than simply describe [the] abstract method." *Ultramercial*, 772 F.3d at 715. Steps for "receiving" a request, "determining" whether the subscriber is registered, and "determining" whether the identified media content is available and permitted to be delivered or stored merely follow the abstract idea itself. *See Citrix*, 363 F. Supp. 3d at 523 (holding that the abstract idea itself cannot serve as the inventive concept). To enable subscribers to request available media content or have it stored for a specified period of time, it would be expected that one would perform steps to check if the request was from an authorized subscriber and whether the media content was available. Checking information in a database is a well-known, routine computer function. The concept of a consumer device accessing a network to request and receive information is also not inventive. *See Affinity Labs*, 838 F.3d at 1271-72. The added limitation of storing the content for a requested "length of time" is itself an abstract concept.

Further, the claims of the '221 patent neither provide a solution to any of the problems identified in the patent's Background, nor identify any technological improvements to the functioning of a computer that might be director toward such solutions.  According to the patent's Background, the purported invention solves the problem of conventional pricing models for on-demand streaming, which may bill at a flat rate regardless of how much television a particular consumer watches, or bill per video at a set price no matter how long the television show runs. The patent also notes that some consumers will request content that is not yet available, but will lose interest by the time that the content becomes available.   But the patent's claims do not specifically solve any such problems, and, regardless, identify no technological improvements. Claims 1-11 make no mention of "cost." Claim 12 recites that a cost is simply

transmitted, but "pay-per-view" cable television subscribers always have been charged a certain amount for receiving a video (such as a boxing match). Claim 13 recites that cost is unaffected by how many times a video is watched, which has always been the case when a consumer rents a video, such as a VHS tape or DVD. None of these claims identifies inventive subject matter and none are directed to technological solutions. Techniques for lowering consumer costs—explained in functional terms and relying on generic components—are abstract, economic practices. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (claims directed to "the ability to automate or otherwise make more efficient traditional price-optimization methods" are abstract). Finally, none of the claims solves the "problem" that a consumer may lose interest in a video before it is made available, which is itself patent-ineligible subject matter.

### b.  The '221 Patent Relies on Use of Generic Computers in Conventional Ways

There is no inventive concept in the context of computer-implemented inventions, when "[n]othing in the claims, understood in light of the specification, requires anything other than [an] off-the-shelf, conventional [processor networked with generic computers]." *Elec. Power Grp.*, 830 F.3d at 1355; *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (holding that "already-available computers" will not save a claim under *Alice* step two). The '221 patent fails in this respect, as well.

This Court has repeatedly invalidated patents that purport to apply broadly to various computers, over various networks, and across various technology fields. For example, in *Citrix*, the patent disclosed that the invention could operate on "any such network or network topology as known to those ordinarily skilled in the art" and included an application "which can be any type and/or form of software." *Citrix Sys. v. AVI Networks, Inc.,* 363 F. Supp. 3d 511, 514 (D. Del. 2019). The Court concluded that the claims included only conventional elements. *See id.* Indeed,

by touting the general applicability of the invention, the patent undermined the patentee's

argument that it was solving "computer-centric problems with computer-centric solutions." *Id. at*

*524.* In *Versata Software, Inc. v. NetBrain Techs., Inc.*, the Court concluded that a patent

contained no inventive concept, only generic hardware and software, where it disclosed that "the

invention is neither limited by the types of computers used as servers, nor the operating systems,

web server or database server application software running on such servers." C.A. No. 13-676-

LPS-CJB, 2015 WL 5768938, at *9 (D. Del. Sept. 30, 2015).  Similarly, in another case, the

Court found a patent claimed ineligible subject matter where the patent stated that "[t]hose

versed in the art will readily appreciate that the invention is . . . applicable to any network

architecture facilitating messaging between communication devices." *TriPlay, Inc. v.*

*WhatsApp Inc.*, C.A. No. 13-1703-LPS-CJB, 2018 WL 1479027, at *8 (D. Del. Mar. 27,

2018), *aff'd*, 771 F. App'x 492 (Fed. Cir. 2019).

 The language in the '221 patent closely resembles the broad language found in the

ineligible patents in *Citrix*, *Versata*, and *TriPlay*. The patent states that:

> The present invention can be realized in hardware, software, or a combination of
> hardware and software. Any kind of computing system, or other apparatus . . . is
> suited to perform the functions described herein. A typical combination of hardware
> and software could be a specialized or general purpose computer system having one
> or more processing elements and a computer program stored on a storage medium . . .
> that controls the computer system such that it carries out the methods. . .

'221 patent at 10:13-21. Or, the invention could be embedded in a "computer program product."

*Id.* at 10:22-23. The consumer devices may be "mobile phones, personal digital assistant

devices, personal computers, . . . digital video recorders, televisions, digital versatile disc

players, among other devices that may communicate via network." *Id.* at 3:56-60. And the

patent repeatedly acknowledges that its components function in conventional ways. *See, e.g.*, *id.*

at 3:61-62 ("Consumer device 12 may communicate with network 18 using communication

-17-

protocols known in the art."); *id.* at 3:65-67 ("Processor 24 may include a central processing unit (CPU) for executing computer program instructions stored in memory 26, as is well known in the art."). This sweeping language—encompassing hardware, software, and *any* computing system—confirms that the '221 patent recites only conventional elements.

Nothing in the '221 patent transforms the abstract idea to which the patent claims are directed into patent-eligible subject matter. Accordingly, the '221 patent claims are invalid and Rothschild's Complaint should be dismissed for failure to state a claim.

### 3. Claim 7 is Representative of the '221 Patent's Claims

In assessing patent eligibility under § 101, a court may evaluate a representative claim rather than reviewing each asserted claim. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1352. Here, claim 7 is the only claim Rothschild identified in the Complaint. The Complaint does not hint that Rothschild is asserting any other claims, but regardless, the remaining claims are also invalid because they are abstract and do not embody "significantly more" than an abstract concept.

Claim 1, the independent claim of the '221 patent besides claim 7, is a system claim that is nearly word-for-word the same as method claim 7, thus method claim 7 is representative of system claim 1, and claim 1 is invalid for lack of patentable subject matter.  The dependent claims are similarly directed to an abstract idea, adding only insubstantial limitations to claim 7. Claims 2 and 8 recite a "storage confirmation message" indicating "whether the requested media content is available for storage," which directly pertains to the limitation in claim 7 that the processor "determine[s]" whether the media is available to be stored. Claims 3, 4, and 9 recite "providing a message prompting a user to register a consumer device," "stor[ing] user data corresponding to an end user media consumer," and "sending a registration message prompting registration of the consumer device," all of which pertain to claim 7's limitation of "determining whether the

consumer device identifier corresponds to a registered consumer device." Similarly, claims 5, 6, and 11 pertain to verifying a consumer device identifier and transmitting content upon verifying the consumer. Finally, claims 12-13 pertain to the abstract concepts of informing the consumer of the cost of the requested media content (claim 12) and doing the same where the cost does not vary based upon the number of times the content is delivered (claim 13). All of these dependent claims are equally as abstract as claim 7 because they either pertain to the same concepts already addressed in claim 7 or otherwise add generic concepts about consumer costs, which are well understood to be unpatentable as abstract ideas.

### C.    The Complaint Fails to State a Plausible Claim for Patent Infringement

If the Court does not dismiss the Complaint with prejudice because the '221 patent is invalid under Section 101, the Court should, in the alternative, dismiss the Complaint for failing to state a claim upon which relief can be granted because the Complaint fails to plead sufficient facts to support a plausible claim of either direct or indirect infringement regarding fuboTV's services.

Claim 7 recites a method that includes "receiving a requested message including media data indicating requested media content ... **wherein the media data includes time data that indicates a length of time to store the requested media content**" '221 patent, 12:14-15. (emphasis added). According to the patent specification, the consumer specifies the length of time for storing the requested media content. *Id.* at 7:64-8:3. The Complaint alleges that fuboTV's accused system receives a message including data specifying the length of time to store media content only with reference to the subscription plan for fuboTV's customers. D.I. 1 ¶ 24 (alleging that "a user is allowed to store media content for maximum time period as based upon their subscription level"). The type of plan in which fuboTV's customers enroll has nothing to do with a

claim requirement to specify the length of time to store media content.   Simply enrolling a subscription plan does not in and of itself permit a user to designate how long the user would like content to be stored un within the fuboTV system, nor does it indicate the user send a request to a server in the fuboTV system to store media for a specified length of time.   The Complaint does not allege that content is removed from the fuboTV system if a user's subscription ends.   Indeed, the Complaint itself includes, at Paragraph 24, a screenshot showing that the answer on the fuboTV website to the question "How long can I save my recording for?" is "Indefinitely (Or until deleted)."   It is not plausible that the cited information concerning fuboTV's customer's ability to save recorded media indefinitely corresponds to the required claim element that the customer must indicate a length of time to store media content.   Accordingly, Rothschild has failed to state a plausible claim for patent infringement, and the Complaint should be dismissed.

## V.      CONCLUSION

For the foregoing reasons, fuboTV respectfully requests that the Court dismiss the Complaint for failure to state a claim.   The '221 patent is invalid for claiming ineligible subject matter.   Accordingly, any amendment would be futile, and the Court should dismiss the Complaint with prejudice.   Alternatively, the Court should dismiss the Complaint because its allegations do not state a plausible claim for patent infringement.

Dated: July 27, 2020

WILSON SONSINI GOODRICH &
ROSATI, P.C.

/s/    *Ian R. Liston*
Ian R. Liston (Del. Bar ID 5507)

*Of Counsel*:
James Yoon
Jamie Otto
Michael Nguyen
WILSON SONSINI GOODRICH
& ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
650-849-3495

WILSON SONSINI GOODRICH
& ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
302-304-7600
iliston@wsgr.com

*Counsel for Defendant fuboTV, Inc.*